UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA EX REL. ROBERT F.      )
LAFOND                                          )      CIVIL ACTION NO.
    Plaintiffs,                                 )
                                                )
v.                                              )      **FILED IN CAMERA**
                                                )      **AND UNDER SEAL**
L-3 COMMUNICATIONS SSG-TINSLEY, INC.            )
    Defendant.                                  )
                                                )

## QUI TAM COMPLAINT

### (I)    INTRODUCTORY STATEMENT

(1)    Plaintiff, Robert F. Lafond, brings this action on behalf of the United States of America under the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3729, et seq. ("Federal FCA"), alleging that the Defendant L-3 Communications SSG-Tinsley, Inc., ("SSG-Tinsley") has violated these laws by: (1) knowingly and intentionally charging the company's "labor costs" to "overhead costs and expenses" which pursuant to the terms of government contracts should have been charged to specific "fixed price" or "cost-plus" agreed upon governmental contracts; and 2) utilizing defective and deceptive pricing schemes with government contracts including the intentional failure to disclose new or revised production processes which the company knew would be used in the implementation of the government contract. The defendant SSG-Tinsley is a company that designs and manufactures space-based and ground-based optical systems and components for various governmental agencies and commercial businesses.

(2)     As a result of these mischarges to overhead costs and other defective pricing schemes and practices utilized by the Defendant SSG-Tinsley, various and numerous federal governmental agencies and departments have incurred significant financial losses and damages.

(3)     Qui Tam Plaintiff Robert F. Lafond seeks through this action to recover damages and civil penalties from the Defendant SSG-Tinsley arising from aforesaid mischarges to overhead costs and other defective pricing schemes and practices.

## (II)     JURISDICTION AND VENUE

(4)     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 3732 which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. § 3729 and § 3730.

(5)     This Court has jurisdiction over the Defendant SSG-Tinsley pursuant to 31 U.S.C. § 3732(a) which provides that "any action under Section 3730 may be brought in any judicial district in which the defendant or in the case of multiple defendants, any one defendant can be found, resides, transacts business or in which any act proscribed by Section 3729 occurred." Section 3732(a) also authorizes nationwide service of process. The Defendant SSG-Tinsley, during all times relevant to this Complaint transacted business within the District of Massachusetts.

(6)     Venue is appropriate in this district pursuant to 31 U.S.C. § 3732(a) because the Defendant SSG-Tinsley can be found, resides in, and/or transacts business in the District of Massachusetts and because some of the violations of 31 U.S.C. § 3729 described herein occurred within this judicial district.

2

(III)   PARTIES

(7)     Robert F. Lafond is a citizen of the United States who has a principal place of residence in Derry, New Hampshire.  He brings this *Qui Tam* lawsuit as an "original source" and as a "Relator" on behalf of the United States of America.  Robert F. Lafond was employed by the Defendant SSG-Tinsley from August 2002 to March 2008 working as Manager of Financial Planning and Analysis.

(8)     The Defendant SSG-Tinsley is a corporation duly organized under the laws of the Commonwealth of Massachusetts with a principal place of business at 65 Jonspin Road, Wilmington, Massachusetts.  The company also has a West Coast Division located at 4040 Lakeside Drive, Richmond, California.

(IV)   FACTUAL ALLEGATIONS—THE FRADULENT AND DECEPTIVE
CHARGING AND BILLING PRACTICES AND SCHEMES
OF SSG-TINSLEY

(9)     For a period of time from at least August 2002 and possibly for years prior to August 2002 and through March 2008 and continuing, the Defendant SSG-Tinsley knowingly, intentionally and consistently perpetrated fraudulent and deceptive charging and billing practices upon numerous agencies and departments of the United States Government.  These fraudulent and deceptive charging and billing practices and schemes include:  a) the fraudulent charging of the company's "labor costs" to "overhead costs and expenses" which pursuant to the terms of the government contracts should have been charged to specific "fixed-price" or "cost-plus" agreed upon contracts; b) the utilization of defective and deceptive pricing with government contracts including the intentional failure to disclose new or revised production processes which the company knew would be used in the implementation of the government contract.

3

- **FIXED PRICE CONTRACTS AND FRAUDULENT CHARGING AND BILLING TO OVERHEAD COSTS**

(10)    During the aforesaid period of time, the Defendant SSG-Tinsley contracted directly with various governmental agencies and departments of the United States Government (hereinafter sometimes referred to as the "Governmental Entities") and with contractors who had contracts with Governmental Entities to provide optical sub-systems and components for space and tactical Department of Defense applications.

(11)    Approximately ninety-five (95%) percent of the Defendant SSG-Tinsley's business as direct contractors with the government or indirectly as sub-contractors involved government contracts.  The Defendant SSG-Tinsley's customer list included:  NASA/Goddard Space Flight Center; NASA/Jet Propulsion Lab; Naval Research Lab; Office of Naval Research; Lockheed-Martin; Northrop Grumman; Ball Aerospace; Raytheon; Air Force Research Lab; and U.S. Army Night Vision and Electronic Systems Directorate.

(12)    During the aforesaid period of time, the Defendant SSG-Tinsley entered into numerous "fixed-price" contracts with Government Entities and with contractors who had contracts with Governmental Entities.  Such "fixed-price" contracts obligated the Defendant SSG-Tinsley to deliver a defined work-product at a pre-determined price.  Under these "fixed-price" contracts, production burden to complete the product at or under the "fixed-price" was upon the Defendant SSG-Tinsley.

(13)    If the Defendant SSG-Tinsley completed the contract below the "fixed price," the Defendant SSG-Tinsley reaped a profit.  However, if the actual charges and costs including labor charges to complete the contract exceeded the "fixed-price," the Defendant SSG-Tinsley was contractually obligated to absorb the relevant loss.

4

(14)    Many of the Defendant SSG-Tinsley "fixed-price" contracts with the Governmental Entities were not completed within the pre-determined "fixed-price" contract figure.  Instead of absorbing costs on contracts which were not completed within the "fixed-price" contract, the defendant SSG-Tinsley knowingly and intentionally and with the full knowledge of the company's Chief Executive Officer (CEO) and Chief Financial Officer (CFO) implemented a fraudulent charging and billing practice and scheme in which labor costs related to the specific contract were fraudulently charged to overhead.

- **SSG-TINSLEY OVERHEAD RATES**

(15)    The Defendant SSG-Tinsley utilized Overhead Rates as the basis for allocating *costs* to contracts when the exact contract figure could not be identified.  The Defendant SSG-Tinsley utilized *direct labor dollars* as the basis for the allocation.

(16)    Contract figures and charges were intentionally manipulated and altered when the defendant SSG-Tinsley fraudulently charged contract *direct labor* to *indirect overhead expenses*. As a consequence, direct labor costs which would have reduced profits on a "fixed-price" contract were spread out and applied to *all contracts* worked during the year resulting in the United States Government being overcharged and billed essentially twice for the same work— i.e. work within the contract price and then billed again for overcharges determined upon a fraudulent rate.

- **FINANCIAL EFFECT UPON "COST-PLUS" TYPE CONTRACTS WITH THE GOVERNMENT**

(17)   The fraudulent manipulation of the Overhead Rate also had an effect upon the total charges billed to the Governmental Entities and the United States Government on "cost-plus" type contracts—contracts which the government was invoiced for labor costs on an ongoing basis *in addition* to Overhead Costs which were based upon a fraudulently manipulated Overhead Rate as detailed hereinabove.  Thus, the government was fraudulently overcharged in these types of contracts as well.

- **YEARLY ESTABLISHMENT OF OVERHEAD RATES**

(18)   The Forward Pricing Rate Agreement (FPRA) i.e. the Overhead Rate is established by the government on a yearly basis with SSG-Tinsley *based upon yearly Overhead Costs submitted to the United States Government by SSG-Tinsley*.  As detailed herein, SSG-Tinsley's misrepresentation of the *actual yearly Overhead Costs* fraudulently altered the Overhead Rate and resulted in overcharges and fraudulent billing *upon all contracts worked during the years*.  As future year Overhead Rates were based upon historical data, each fraudulently-altered Overhead Rate resulted in the U.S. Government being over-billed and over-charged for each subsequent year.

- **THE RELATIONSHIP BETWEEN THE FRAUD, THE ATTAINMENT OF A YEARLY PROFIT AND YEARLY BONUSES FOR SSG-TINSLEY MANAGEMENT**

(19)   Yearly bonuses would be paid to upper management, if the company attained certain pre-determined yearly profit goals.  In some cases, the yearly bonuses would be equal to

the management personnel's yearly salary. Thus, there clearly was a strong, personal financial incentive for these individuals to increase the company's yearly profit.

(20)   As detailed herein, in an effort to artificially boost yearly profit figures, SSG-Tinsley knowingly and intentionally and with knowledge of the company's CEO and CFO implemented a fraudulent charging and billing practice and scheme in which labor costs related to specific "fixed-price" contracts were fraudulently charged to Overhead instead of absorbing said costs within the fixed-price contracts.   Further as detailed herein, the fraudulent manipulation of the Overhead Rate resulted in fraudulent additional charging to the Governmental Entities and the United States on "cost-plus" type contracts as well.   Two objectives were achieved by this fraudulent activity: 1) yearly profits were artificially inflated to reach yearly Profit Goals so that upper management bonuses could be paid; and 2) the government was fraudulently billed and charged resulting in more yearly revenue for the company.

- ## SSG-TINSLEY'S ELECTRONIC TIMEKEEPING SYSTEM

(21)   Deltek "Time and Expense" (formerly called "Time Collection") is the electronic timekeeping software utilized at SSG-Tinsley. It was installed in March of 2004 and has been in use continuously since then. The Relator in his position as Manager of Financial Planning and Analysis had daily access to the System and the reporting by employees relating to labor time expended upon government projects. Upon analysis and review of the employee's daily labor time reporting, the Relator became initially aware of the company's fraudulent charging and billing practices.

7

(22)    Employees were supposed to complete an electronic timecard on a daily basis. Employees selected a charge number (also called job number) from a drop-down box based upon the job or contract name. Employees were required to enter the hours worked on each job to the nearest tenth off an hour. They also had the option to enter "notes" electronically. Notes were utilized for reminders of work accomplished or to provide additional details about the charge. Employees then saved the timecard. At the end of the work week, employees electronically "signed" their timecard by entering their password. The employee's supervisor then reviewed the timecard and had the option to reject or approve the timecard. Rejected timecards were sent back to the employee for correction.

(23)    Issues and problems arose when employee's notes on their timecards indicated that contract work was being charged improperly to Overhead Expense.

- ## DEFECTIVE AND DECEPTIVE PRICING WITH GOVERNMENT CONTRACTS

(24)    The Defendant SSG-Tinsley has also defrauded the United States Government by utilizing defective and deceptive pricing including the intentional failure to disclose during the negotiations of government contracts new or revised production processes which the company knew would be used in the implementation of the government contract.

(25)    A contractor negotiating a contract with the United States Government is expected to disclose verifiable data, judgmental factors used to project from known data to the estimate and contingencies included in the proposed price. Further, such a contractor is obligated under the provisions of the Truth in Negotiations Act (TINA) and the Federal Acquisition Regulation (FAR) to provide all facts that as of the date of the price agreement any

prudent buyer and seller would reasonably expect to affect price negotiation significantly including information on charges in production processes and methods.

(26)    As a result of said defective and deceptive pricing, the Defendant SSG-Tinsley reaped astronomical returns of profit on various government contracts and jobs ranging from One Hundred Twelve (112%) Percent to One Hundred and Sixty-Two (162%) Percent.

- **THE RELATOR ON NUMEROUS OCCASIONS PRESENTED AND EXPRESSED CONCERNS REGARDING THE COMPANY'S FRAUDULENT BILLING PRACTICES TO THE COMPANY'S MANAGEMENT**

(27)    The Relator presented and expressed concerns to the Chief Financial Officer of the Defendant SSG-Tinsley concerning the company's practice of defective and deceptive pricing with government contracts; however, the Relator's expressed concerns were ignored and dismissed by the Chief Financial Officer.

(28)    Further on numerous occasions, the Relator presented and expressed concerns relating to the company's fraudulent practices of charging labor costs to overhead costs relating to government contracts.  These concerns were presented to the company's Chief Executive Officer, Chief Financial Officer, Controller and Assistant Controller.

(29)    Once again, the Relator's concerns relating to the aforesaid fraudulent practices were ignored and dismissed by management.

(30)    Frustrated with the lack of response by management relating to the company's fraudulent and deceptive billing and charges practices, the Relator called an emergency meeting on November 7, 2007 with the company's Chief Executive Officer, Chief Financial Officer and Controller to discuss the company's mischarging practices with government contracts.

9

(31)    At the meeting of November 7, 2007, the Relator informed the company's Chief Executive Officer, Chief Financial Officer and Controller of the extensive mischarging to government contracts that was being undertaken by employees. The Relator recommended *immediate* correction of charges, formal employee training and an audit plan to ensure compliance. The Chief Financial Officer told all parties at the meeting that he had "everything under control." The Chief Executive Officer responded:

"We could go to jail for this, make this go away."

(32)    Although some mischarging of hours was corrected, neither formal employee training nor audits were instituted. There was no further discussion with or corrective action undertaken by the Chief Financial Officer or the Chief Executive Officer regarding the mischarging

(33)    In fact after the November 7, 2007 meeting, the Chief Financial Officer treated the Relator in a hostile fashion and had limited communications with the Relator, Robert Lafond and the Chief Executive Officer had no contact with the Relator.

(34)    Shortly thereafter, the Relator received a poor performance appraisal and a zero bonus from the Chief Financial Officer.

(35)    Based upon the company's consistent refusal to address its fraudulent mischarging to government contracts and his hostile treatment by the Chief Executive Officer and the Chief Financial Officer after the November 7, 2007 meeting, the Relator resigned his position as Manager of Financial Planning and Analysis for SSG-Tinsley effective March 28, 2008.

(V)   THE DEFENDANT, SSG-TINSLEY

(36)   The Defendant SSG-Tinsley for a period of time from at least to August 2002 and possibly for years prior to August 2002 and through March 2008 and continuing, knowingly and intentionally committed consistent and numerous fraudulent acts upon Governmental Entities including without limitation:

(a)   The fraudulent charging of the company's "labor costs" to "overhead costs and expenses" which pursuant to the terms of the government contracts should have been charged to specific "fixed-price" or "cost-plus" agreed upon contracts;

(b)   The utilization of defective and deceptive pricing with government contracts including the intentional failure to disclose new or revised production processes which the company knew would be used in the implementation of the contract.

(37)   Each individual fraudulent act undertaken by the Defendant SSG-Tinsley as aforesaid is a false claim caused by the Defendant SSG-Tinsley under the Federal False Claims Act, 31 U.S.C. § 3729 et seq.

(38)   By reason of the hereinabove-described fraudulent acts and practices of the Defendant SSG-Tinsley, the United States of America has incurred substantial damages.

(VI)   THE GOVERNMENTAL ENTITIES

(39)   The Governmental Entities that were defrauded from the aforesaid fraudulent charging and billing and from the aforesaid defective pricing scheme and practices were numerous and included but may not be limited to: the United States Department of Defense; the National Aeronautics Space Agency (NASA); the Armed Forces of the United States, the United States Navy; the United States Air Force; and the United States Marines.

11

(VII)   VIOLATION OF THE FEDERAL FALSE CLAIMS ACT

(40)   Robert F. Lafond is the Plaintiff/Relator who is the original source of the facts and information concerning the fraudulent acts and practices of the Defendant SSG-Tinsley.  The Plaintiff/Relator has direct and independent knowledge of the information upon which the allegations are based and has voluntarily provided the information to the United States before filing an action based upon such information.

## LEGAL CLAIMS FOR RELIEF

### COUNT I

### VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT, 31 U.S.C. § 3729(a)(1)

(41)   The Plaintiff/Relator repeats and re-alleges each and every allegation set forth in paragraphs 1 through 40 as though set forth fully herein.

(42)   The Defendant SSG-Tinsley knowingly presented or caused to be presented to an officer or employee of the United States Government false or fraudulent claims for payment or approval, all in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1).

(43)   The United States paid said claims and has sustained damages because of these acts by the Defendant SSG-Tinsley.

12

## COUNT II

### VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT, 31 U.S.C. § 3729(a)(2)

(44)    The Plaintiff/Relator repeats and re-alleges each and every allegation set forth in paragraphs 1 through 43 as though set forth fully herein.

(45)    The Defendant SSG-Tinsley knowingly made, used and caused to be made false records and statements to get false or fraudulent claims paid or approved by the Unites States, all in violation of the False Claims Act, 31 U.S.C. § 3729(a)(2).

(46)    The United States paid said claims and has sustained damages because of these acts by the Defendant SSG-Tinsley.

## COUNT III

### VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT, 31 U.S.C. § 3729(a)(3)

(47)    The Plaintiff/Relator repeats and re-alleges each and every allegation set forth in paragraphs 1 through 46 as though set forth fully herein.

(48)    The Defendant SSG-Tinsley knowingly conspired to defraud the United States by getting false or fraudulent claims allowed or paid, all in violation of the False Claims Act, 31 U.S.C. § 3729 (a)(3).

(49)    The United States paid said claims and has sustained damages because of these acts by the Defendant SSG-Tinsley.

13

## COUNT IV

### VIOLATIONS OF THE TRUTH IN NEGOTIATIONS ACT, 10 U.S.C. § 2306 AND THE FEDERAL PROCUREMENT REGULATION

(50)    The Plaintiff/Relator repeats and re-alleges each and every allegation set forth in paragraphs 1 through 49 as though set forth fully herein.

(51)    The above-described practices by the Defendant SSG-Tinsley have caused the submission of false and fraudulent claims to the United States by knowingly and intentionally failing to disclose new or revised production processes to the United States during contract negotiations in which the defendant SSG-Tinsley knew would be used in the implementation of government contracts, all in violation of the Truth in Negotiations Act, 10 U.S.C. § 2306 and the Federal Procurement Regulation.

## COUNT V

### MAJOR FRAUD AGAINST THE UNITED STATES OF AMERICA, 18 U.S.C. § 1031

(53)    The Plaintiff/Relator repeats and re-alleges each and every allegation set forth in paragraphs 1 through 52 as though set forth fully herein.

(54)    The Defendant SSG-Tinsley knowingly defrauded the United States as both a prime contractor and sub-contractor in contracts with the United States for property and/or services in amounts exceeding One Million ($1,000,000) Dollars in an attempt to obtain money from the United States by means of false or fraudulent pretenses, representations, or promises, all in violation of 18 U.S.C. § 1031.

14

(55)     As a result of said fraudulent actions by the Defendant SSG-Tinsley. the United States paid fraudulent claims submitted to it by the Defendant SSG-Tinsley and has suffered damages because of these fraudulent acts of the Defendant SSG-Tinsley.

## COUNT VI

## DEFENDANT'S UNLAWFUL RETALIATION AGAINST RELATOR, 31 U.S.C. § 3730(h)

(56)     The Plaintiff/Relator repeats and re-alleges each and every allegation set forth in paragraphs 1 through 52 as though set forth fully herein.

(57)     The Defendant SSG-Tinsley threatened, harassed and otherwise discriminated against the Relator because of his lawful acts involving potential violations of the False Claims Act by his employer, SSG-Tinsley.  By these actions, the Defendant SSG-Tinsley violated the False Claims Act, 31 U.S.C. § 3730(h).

(58)     The Relator has been damaged as a result of these illegal actions. He has suffered great economic harm, loss of income, and emotional injury.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff/Relator respectfully requests this Court to enter judgment and orders against the defendant, SSG-Tinsley as follows:

(1)     That Defendant SSG-Tinsley cease and desist from violating 31 U.S.C. § 3729;

(2)     That this Court enter judgment against the Defendant SSG-Tinsley in an amount equal to three times the amount of damages the United States has sustained because of the

15

Defendant's actions, plus a civil penalty of not less than $5,500 and not more than $11,000 for each violation of 31 U.S.C. § 3729;

(3)    That Robert F. Lafond, the Plaintiff/Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d) of the Federal False Claims Act;

(4)    That Robert F. Lafond, the Plaintiff/Relator be granted relief and awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(h);

(5)    That Robert F. Lafond, the Plaintiff/Relator be awarded all costs of this action including attorney fees and costs; and

(6)    That Robert F. Lafond, the Plaintiff/Relator and the United States of America be afforded such other relief as the Court deems just and proper.

Respectfully Submitted,
Robert F. Lafond, Relator/Plaintiff
By His Attorney,

Date:   February 17, 2009

Robert C. Autieri, Esquire
LAW OFFICES OF ROBERT C. AUTIERI
Willows Professional Park
811 Turnpike Street
North Andover, MA 01845
B.B.O.: #024342
Telephone: (978) 681-0737

C:\WPDOC\FA FALSE CLAIMS\LAFOND\PLEADINGS\02.3.09 QUI TAM COMPLAINT.doc